## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **JAMES E. GJERSET, SR. AND LUANNE GJERSET.** | § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § § | **CIVIL ACTION NO. 1:22-cv-01330-LY** |
| **TRANSAMERICA LIFE INSURANCE COMPANY** | § § § | |
| **Defendant.** | § § § | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiffs James E. Gjerset, Sr. and Luanne Gjerset ("Plaintiffs" or "the Gjersets") file this Amended Complaint and allege the following:

## I.    PARTIES

1.    Transamerica Life Insurance Company ("Transamerica" or "Defendant") is an Iowa corporation with its principal place of business in Cedar Rapids, Iowa. Plaintiffs' original complaint, filed in state court and removed by Defendant, named the Transamerica Corporation doing business as Transamerica Life Insurance Company as the sole Defendant. Discussion with counsel for Transamerica revealed the Transamerica Life Insurance Company is actually a separate legal entity. Plaintiffs file this Amended Complaint, by agreement with counsel, to substitute the correct party.

2.    Plaintiff Dr. James E. Gjerset, Sr. is an individual residing in Williamson County, Texas.

3.    Plaintiff Luanne Gjerset is an individual residing in Williamson County, Texas.

## II.    JURISDICTION AND VENUE

4.    This Court has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. § 1441, as this case was removed to federal court on December 19, 2022, and it is a case over which this Court has original jurisdiction under 28 U.S.C. § 1332, for the matter in controversy exceeds $75,000 and there is complete diversity of citizenship between Plaintiffs and Defendant Transamerica.

5.    Venue is proper in, and Defendant is subject to the personal jurisdiction of, this Court because all or most of the events giving rise to this action occurred in this District. 28 U.S.C. § 1391(b).

## III.    FACTUAL BACKGROUND

6.    Plaintiffs bring this lawsuit to compel Transamerica to fulfill its obligations under two long term care insurance policies, which the Plaintiffs have held for over twenty years.  After exhausting the administrative claims process and experiencing repeated obstruction and delay, Plaintiffs were forced to bring this petition to enforce their rights under their insurance policies.

7.    On or about January 13, 2000, Plaintiffs initiated long-term care insurance policies through Bankers United Life Assurance Company of Cedar Rapids, Iowa.  Through consolidation and change of ownership, Plaintiffs' policies are now held by Defendant.

8.    Dr. Gjerset first experienced medical issues related to age that necessitated assistance in mid-2019.  In July 2019, Dr. Greg Allen evaluated Dr. Gjerset, determined he had some signs of dementia, and recommended limitations on his unsupervised activities.

9.    In February 2020, Dr. Gjerset began receiving daily care from Lee Wolber to assist with the activities of daily living.

10.    In June 2021, Dr. Gjerset originally filed a claim for support under Dr. Gjerset's long-term care policy.

11.    On July 28, 2021, Defendant denied Dr. Gjerset's claim.

12.    On August 20, 2021, Dr. Gjerset filed a formal appeal with documentation supporting the "proof of loss," a term used by Defendant for claims evaluation.

13.    Defendant agreed to re-evaluate the claim and conducted a site visit with Dr. Gjerset and Mr. Wolber on September 8, 2021.

14.    On September 16, 2021, Defendant indicated they would approve the claim from September 8 forward, but for only four-hours per day.

15.    After Defendant's initial evaluation and determination that four-hours per day was sufficient coverage, Dr. Gjerset fell and broke his hip.

16.    Dr. Gjerset's broken hip required inpatient hospital care, treatment in a skilled nursing facility, and a transition to 24/7 care as exists today.

17.    Dr. Gjerset subsequently asked Defendant to re-evaluate Dr. Gjerset's care needs and provided neurological reports and medical records.  Transamerica reviewed the claim and performed additional evaluations of all of the caretakers and Dr. Gjerset in December 2021.

18.    On November 10, 2021, Luanne Gjerset initiated a claim under her policy.

19.    In January 2022, Defendant approved both Plaintiffs for 24/7 coverage in their home from their providers of choice under the home health care benefit of their policies.

20.    As revealed by Defendant's billing process, Defendant has been limiting payments to $14,000 per month total, compared to $30,000 per month in expenses, which is less than the policy maximum of $27,500 per month total.

21.     Defendant applies a $230 per day per policy limit on "basic services" and a $459 per day per policy limit on "professional services."  Defendant has been interpreting the services rendered Plaintiffs as "basic services," applying the lower per day per policy limit.

22.     The claims process has now revealed Defendant is rejecting claims once they reach a total of approximately $7,000 per month per policy, based on its application of the $230 per day limit.

23.     Defendant should apply the higher $459 per policy per day limit to reimbursement for Plaintiffs' claims because 1) the policy terms and applicable regulations support the higher level of reimbursement, 2) the Transamerica plan of care supports payment for a professional level of care, and 3) the actual services provided meet the definition of professional services under the policy and applicable regulations.

24.     Plaintiffs appealed this issue through Defendant's administrative process, which Defendant rejected based on a dispute of material fact regarding the character of the services provided to Plaintiffs.

25.     Aside from the refusal to reimburse claims at the policy limit, Defendant has engaged in numerous other bad faith practices designed to frustrate and delay the underlying claims process.

26.     Defendant initially refused to permit home health coverage from a provider of choice because it did not acknowledge the terms of Plaintiffs' policy, which was written by a predecessor in interest to Defendant. The appeal process resulted in a loss of reimbursement, which Defendant has thus far refused to address.

27.     Defendant initially would only cover 4 hours of home health care for an individual with a severe cognitive issue and challenges with many of the activities of daily living.

Defendant's refusal to acknowledge Dr. Gjerset's need for more than 4 hours of daily coverage in its initial coverage determination preceded a hip injury that could have been prevented if Dr. Gjerset had more complete coverage options at the time.

28.     Along with the imposition of appeal processes, Defendant has devised a system designed to thwart claims adjudication and payment. Defendant forces the policy beneficiaries, who often are facing physical and cognitive challenges in their old age, to navigate an intentionally Kafkaesque bureaucratic system.

29.     Defendant sets barriers to having representatives address claims adjudication.  At one point, Defendant "lost" the mailing address for Plaintiffs and was unsure if it could prevent the issue from happening again.

30.     Defendant engages in a paper war with its policy beneficiaries.  Defendant treats each caregiver and each incidence of care as a separate claim, then sends letters, now numbering in the hundreds, stating it has received claims, is reviewing claims, needs more information on claims, has denied claims, or has closed claims.

31.     None of Defendant's correspondence appears consistent; none of the correspondence identifies which aspect of a "claim" it is referencing.  Defendant often issues Explanations of Benefits (EOBs) contradicting prior correspondence, issue correspondence, EOBs, or payments simultaneously, which makes it difficult to identify needed action.

32.     Defendant will also routinely "close" and open "claims" without reference to which claim it is processing.

33.     When Defendant makes payments, EOBs will not arrive until weeks later by mail, preventing real-time evaluation of claims adjudication.

34.    The combined effect of these actions, indeed every aspect of the claims process, is designed to confuse and frustrate claims adjudication.

## IV.    CAUSES OF ACTION

### A.    Bad Faith

35.    Plaintiffs are insured under an insurance contract issued by Defendant, which gave rise to a duty of good faith and fair dealing under Texas state law.

36.    Defendant breached the duty by repeatedly delaying some and ultimately denying other payments of a covered claim when Defendant knew its liability under the policy was reasonably clear.

37.    Defendant's breach of duty caused injury to Plaintiffs in the amount of the difference between the services provided and the $230 daily limitation imposed by Transamerica, as well as damages related to unnecessary delays in processing claims, which postponed payment for services under the policy.

38.    Plaintiff seeks unliquidated damages within the jurisdictional limits of this court.

39.    Plaintiff suffered injury independent of the loss of policy benefits, and that injury resulted from defendant's gross negligence, malice, or actual fraud, which entitles plaintiff to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a).

### B.    Deceptive Insurance Practices

40.    Plaintiffs are each a "person" as defined by Texas Insurance Code Section 541.002(2).

41.    Defendant is a person as defined by Texas Insurance Code Section 541.002(2).

42.     Defendant engaged in an act or practice that violated Texas Insurance Code chapter 541, subchapter B through its refusal to pay under the applicable policy limits and designing its claims process to frustrate the proper adjudication of claims.

43.     Defendant's act or practice was a producing cause of actual damage by its refusal to pay under the policy limits.

## C.     Deceptive Trade Practices Act Violations

44.     Plaintiffs are consumers under the Texas DTPA because plaintiffs are individuals residing in the State of Texas.

45.     Defendant is a corporation that that can be sued under the DTPA.

46.     Defendant violated the DTPA when defendant: 1) engaged in false, misleading, or deceptive acts or practices that plaintiffs relied on to plaintiffs' detriment, specifically, by engaging in an unconscionable action or course of action that, to plaintiff's detriment, took advantage of plaintiff's lack of knowledge, ability, experience, or capacity to a grossly unfair degree; and 2) used or employed an act or practice in violation of Texas Insurance Code chapter 541 by refusing to pay claims at the correct policy limit.

47.     Plaintiffs gave Defendant notice of their intent to file suit as required by Texas Business & Commerce Code section 17.505(a).

48.     Defendant's wrongful conduct was a producing cause of Plaintiffs' injuries, which resulted in damages as described herein.

49.     Plaintiffs seek recovery of unliquidated damages that are within the jurisdictional limits of this court.

**D.     Breach of Contract**

51.     Defendant defaulted and breached their obligations under their policy agreements with Plaintiffs.

52.     Plaintiffs made proper demand for payment under these agreements.

53.     Plaintiffs and Defendant entered into valid, enforceable contracts and Plaintiffs fully performed their obligations under the contracts.

54.     Defendant breached its obligations by failing to make payment called for under the agreements with Plaintiffs.

55.     Plaintiffs seek judgment against Defendant under their contracts with Defendant for all amounts due and owed.

**Attorneys' Fees**

56.     Plaintiffs incorporate the facts and allegations in the foregoing paragraphs as if fully set forth herein.

57.     Pursuant to Texas Civil Practice & Remedies Code § 38.001, Texas Insurance Code chapter 541, and Texas Business and Commerce Code Section 17.50, Plaintiffs are entitled to recover their reasonable and necessary attorneys' fees incurred in prosecuting this lawsuit, for which they specifically pray.

## V.     CONDITIONS PRECEDENT

58.     All conditions precedent to the filing of this lawsuit have occurred.

## VI.     JURY DEMAND

59.     Plaintiffs filed a demand for trial by jury with this Court on December 28, 2022 and incorporate that demand into this Amended Complaint.

## VII.    PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray they be granted the following relief:

a.    Defendants be cited to appear and answer herein;

b.    Trial by jury;

b.    Actual damages incurred by Plaintiffs as a result of Defendant's conduct;

c.    Prejudgment interest as allowed by law;

d.    Post-judgment interest as allowed by law;

e.    All costs in prosecuting this action;

f.    Reasonable and necessary attorneys' fees; and

g.    Such other and further relief, whether legal or equitable, to which Plaintiffs may be justly entitled.


Respectfully submitted,


_/s/ Baxter Morgan_
Baxter Morgan
Texas Bar No. 24051083
morgan@gl-law.com
Lance J. Ramsey
Texas Bar No. 00797282
ramsey@gl-law.com
**GJERSET & LORENZ, LLP**
2801 Via Fortuna, Suite 500
Austin, Texas 78746
Telephone:   (512) 899-3995
Facsimile:    (512) 899-3939

ATTORNEYS FOR PLAINTIFFS

## <u>CERTIFICATE OF CONFERENCE</u>

This is to certify that on January 4, 2023, Baxter Morgan, counsel for Plaintiffs conferred with Steven Brogan, counsel for Defendant, by telephone and email regarding the substance of this Amended Complaint. Defendant's counsel consented to an amendment to Plaintiffs' Complaint to substitute the Transamerica Life Insurance Company as the Defendant in this action.

*/s/ Baxter Morgan*              
Baxter Morgan

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 6, 2023, a true and correct copy of the above and foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

*/s/ Baxter Morgan*              
Baxter Morgan
